THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| TROY R. COLLIER, ) | |
| ) | Case No. 21 CV 50440 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ILLINOIS DEPARTMENT OF HUMAN ) | |
| SERVICES, THERESA EAGLESON, in her ) | |
| official capacity as director of the Illinois ) | |
| Department of Human Services, and ERIKA ) | |
| FORD, in her individual capacity, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, Troy R. Collier ("Plaintiff"), by and through his attorneys, the Law Offices of Michael T. Smith & Associates, in complaining of the defendants, Illinois Department of Human Services ("DHS"), Theresa Eagleson, in her official capacity as the director of the Illinois Department of Human Services ("Eagleson"), and Erika Ford ("Ford", or referred to collectively as Defendants), in her individual capacity, states as follows:

### JURISDICTION AND VENUE

1. Plaintiff brings this action against DHS under the Family Medical Leave Act, 29 U.S.C. 2601 *et seq.* ("FMLA") for interfering with Plaintiff's FMLA rights and retaliating against him for attempting to exercise his FMLA rights, against Eagleson for injunctive relief (reinstatement) under 42 U.S.C. § 1983 ("Section 1983") for violation of the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981") for discriminating against him on the basis of his race and for retaliating against him for his complaints of the same, and against Erika Ford, in her individual capacity, under Section 1983

and the and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution ("14th Amendment"), for discriminating against him on the basis of his race and for retaliating against him for his complaints of the same.

2. Jurisdiction of this action is conferred upon the Court by Section 1983 to enforce Plaintiff's rights under Section 1981 and the 14th Amendment, and by 28 U.S.C. §§ 1331, 1343 to enforce Plaintiff's rights under the FMLA.

3. Venue for this action is proper in the United States District Court for the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391(b)(1)-(2) and (d) because the employment practices hereafter alleged to be unlawful were committed in the Northern District of Illinois and because Defendant's contacts are sufficient to subject it to personal jurisdiction in that district.

## PARTIES

4. Plaintiff is an adult, African-American individual and is a resident of Freeport, Illinois.

5. DHS is a state agency organized under the laws of the State of Illinois with its main offices in Chicago and Springfield, Illinois.

6. At all times relevant to the allegations herein, Eagleson was the director of DHS.

7. At all times relevant to the allegations herein, Erika Ford is a White employee of DHS and acted as Plaintiff's manager.

8. At all times relevant to the allegations herein, DHS was an "employer" of Plaintiff as that term is defined under the FMLA.

9. At all times relevant to the allegations herein, Plaintiff was an "employee" of DHS as that term is defined under the FMLA.

**FACTUAL ALLEGATIONS**

10. Plaintiff began employment with DHS on or around February 18, 2014. Plaintiff's most recent position with DHS was a Human Services Caseworker.

11. At all times relevant to the allegations herein, Plaintiff was meeting the legitimate job performance expectations of Defendants when those performance expectations were applied equally to employees similarly situated to Plaintiff, regardless of race, engagement in protected activity, or exercising FMLA rights.

12. Plaintiff has been subjected to racially discriminatory treatment and harassment while working for DHS.

13. For instance, Lisa Roberts, Plaintiff's supervisor and Ford's subordinate, frequently referred to Plaintiff and one of his Black coworkers as "boy". Ms. Roberts did not refer to any of Plaintiff's White coworkers as "boy." Plaintiff complained to Ford about the remarks but dismissed Plaintiff's complaint and did nothing to prevent such comments from being made by Ms. Roberts in the future.

14. Plaintiff also complained to Ford about White clients referring to him as "nigger" and making other racially derogatory remarks, but Ford did nothing in response to Plaintiff's complaints. Plaintiff found Ford's failure to act to be particularly egregious because she had banned clients from coming to the office for making inappropriate remarks to her and other White caseworkers.

15. Ford continuously monitored and micromanaged Plaintiff, overly scrutinized Plaintiff's work performance, and loudly admonished him in front of his coworkers without legitimate cause but did not subject similarly situated White caseworkers to the same treatment.

16. In or around September 2019, Ford told Plaintiff that he could no longer work

overtime, but did not prevent any similarly situated White caseworkers from working overtime.

17. In or around August and October 2019, Ford refused to assist Plaintiff with completion of documents that he needed to submit in order to obtain travel and be reimbursed for business related travel expenses.

18. Ford also frequently made remarks to Plaintiff that included him in a group of people she referred to as "you people" or "you type of people", which Plaintiff understood to mean Black people.

19. For instance, on or around September 20, 2019, in a meeting with Plaintiff, Ford, and Plaintiff's supervisor, Lisa Roberts, Ford said that there were people in the office who were afraid of him. When Plaintiff inquired further about how or why someone would be afraid of him, she said, "Well you know, some people are afraid of your type of people." At that time, Plaintiff indicated that he was frustrated and disturbed by Ford continuously making those types of racial comments to him.

20. A few days later, Ford told Plaintiff that he should put on a big black afro wig and paint his face "really black" and dress up "like the guy in Hootie and the Blowfish." Plaintiff and other employees in the office who had heard Ford's comment were offended.

21. On or around September 23, 2019, Ford placed Plaintiff on a corrective action plan, allegedly for failing to properly process SNAP applications, and advised Plaintiff that he would was no longer allowed to handle SNAP cases because he would make mistakes, despite the fact that Plaintiff had never made any mistakes handling SNAP cases. When Plaintiff and his union asked Ford for proof that he was having issues working on SNAP cases, she could not provide any proof or examples.

22. On or around October 25, 2019, after Ford called Plaintiff numerous times over

the course of 2 to 3 hours, sometimes just minutes apart, about his work, which he was having no issues completing, Plaintiff finally expressed to Ford that he felt like she was harassing him and that he was tired of her "nasty comments", at which point she said, "If you feel like that, then you can just go home."

23. Thereafter, Plaintiff felt overwhelmed with anxiety and stress and sought psychological treatment. Plaintiff's doctor provided him with a note excusing him from work from October 28 through November 6, 2019.

24. Plaintiff's doctor then provide a note excusing him from work from November 6, 2019, through January 7, 2020.

25. Plaintiff contacted human resources to request FMLA leave, but he was told to fill out a disability leave request.

26. Plaintiff did complete a disability leave request form as directed and followed DHS's procedures for taking medical leave, however, he was terminated by Ford on January 16, 2020, in part for his absences between October 28, and November 18, 2019, which should have been excused FMLA leave, and in part for other basis that were false, unwarranted, discriminatory, and retaliatory.

27. All of Ford's actions and incidents of failure to act alleged above were taken by Ford acting under color of state law.

### COUNT I
### (SECTION 1983 CLAIM AGAINST FORD FOR VIOLATION OF EQUAL PROTECTION CLAUSE OF THE 14th AMENDMENT SEEKING DAMAGES - RACE DISCRIMINATION)

28. Plaintiff re-alleges paragraphs 1 through 27 and incorporates them as if fully set forth herein.

29. Ford intentionally subjected Plaintiff to unequal and discriminatory treatment by

terminating his employment because of his race knowingly failing and refusing to protect him from such discrimination.

30. Ford's actions and failures to act violated Plaintiff's right to be free from race discrimination and harassment guaranteed by the Equal Protection Clause 14th Amendment and 42 U.S.C. § 1983.

31. Ford's acts and failures to act were intentional, willful, malicious, and/or in committed with deliberate indifference for Plaintiff's rights as guaranteed by the 14th Amendment and 42 U.S.C. § 1983.

32. As a result of Ford's action, Plaintiff has suffered economic damages, severe emotional distress, anxiety, and mental anguish.

33. Plaintiff demands to exercise her right to a jury trial of this matter.

## RELIEF REQUESTED AS TO COUNT I

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Ford on Count I and that it award Plaitniff:

a) The value of all actual damages to be proved at trial;

b) compensatory damages for emotional distress;

c) punitive damages;

d) reasonable attorney's fees, costs and disbursements;

e) equitable/injunctive relief;

f) any and all other relief as the Court deems just.

## COUNT II
### (SECTION 1983 CLAIM AGAINST FORD FOR VIOLATION OF EQUAL PROTECTION CLAUSE OF THE 14th AMENDMENT SEEKING DAMAGES - RETALIATION FOR COMPLAINING OF RACE DISCRIMINATION)

34. Plaintiff re-alleges paragraphs 1 through 27 and incorporates them as if fully set forth herein.

35. Ford intentionally subjected Plaintiff to retaliatory treatment by terminating his employment because he complained of race discrimination.

36. Ford's actions and failures to act violated Plaintiff's right to be free from retaliation for complaining of race discrimination and harassment guaranteed by the Equal Protection Clause 14th Amendment and 42 U.S.C. § 1983.

37. Ford's acts and failures to act were intentional, willful, malicious, and/or in committed with deliberate indifference for Plaintiff's rights as guaranteed by the 14th Amendment and 42 U.S.C. § 1983.

38. As a result of Ford's action, Plaintiff has suffered economic damages, severe emotional distress, anxiety, and mental anguish.

39. Plaintiff demands to exercise her right to a jury trial of this matter.

## RELIEF REQUESTED AS TO COUNT II

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Ford on Count II and that it award Plaintiff:

a) The value of all actual damages to be proved at trial;

b) compensatory damages for emotional distress;

c) punitive damages;

d) reasonable attorney's fees, costs and disbursements;

e) equitable/injunctive relief;

f) any and all other relief as the Court deems just.

## COUNT III
### (SECTION 1983 CLAIM AGAINST FORD FOR VIOLATION OF SECTION 1981 - RACE DISCRIMINATION)

40. Plaintiff re-alleges paragraphs 1 through 27 and incorporates them as if fully set forth herein.

41. Section 1981 prohibits discrimination on the basis of race in the making, performing, modifying, and termination of contracts, including at-will employment contracts.

42. By virtue of Plaintiff's and DHS's employment relationship, an employment contract was made by and between Plaintiff and DHS.

43. Ford intentionally interfered with the performance and termination of the contract between Plaintiff and IDHS on the basis of Plaintiff's race when it discriminated against him by creating a hostile and abusive work environment that altered the terms and conditions of his employment and terminating his employment.

44. Ford's actions and failures to act violated Plaintiff's rights under Section 1981 and Section 1983.

45. Ford's acts and failures to act were intentional, willful, malicious, and/or committed with deliberate indifference for Plaintiff's rights as guaranteed by Section 1981 and Section 1983.

46. As a result of Ford's action, Plaintiff has suffered economic damages, severe emotional distress, anxiety, and mental anguish.

47. Plaintiff demands to exercise her right to a jury trial of this matter.

### RELIEF REQUESTED AS TO COUNT III

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Ford on Count III and that it award Plaintiff:

a) The value of all actual damages to be proved at trial;

8

    b)    compensatory damages for emotional distress;

    c)    punitive damages;

    d)    reasonable attorney's fees, costs and disbursements;

    e)    equitable/injunctive relief;

    f)    any and all other relief as the Court deems just.

**COUNT IV**
**(SECTION 1983 CLAIM AGAINST FORD FOR VIOLATION OF SECTION 1981 - RETALIATION)**

48. Plaintiff re-alleges paragraphs 1 through 27 and incorporates them as if fully set forth herein.

49. Section 1981 prohibits retaliation for complaining of race discrimination in the making, performing, modifying, and termination of contracts, including at-will employment contracts.

50. By virtue of Plaintiff's and DHS's employment relationship, an employment contract was made by and between Plaintiff and DHS.

51. Ford intentionally interfered with the performance and termination of the contract between Plaintiff and IDHS when it retaliated against Plaintiff for complaining of race discrimination by creating a hostile and abusive work environment that altered the terms and conditions of his employment and terminating his employment because he complained of race discrimination.

52. Ford's actions and failures to act violated Plaintiff's rights under Section 1981 and Section 1983.

53. Ford's acts and failures to act were intentional, willful, malicious, and/or committed with deliberate indifference for Plaintiff's rights as guaranteed by Section 1981 and Section 1983.

54. As a result of Ford's action, Plaintiff has suffered economic damages, severe emotional distress, anxiety, and mental anguish.

55. Plaintiff demands to exercise her right to a jury trial of this matter.

## RELIEF REQUESTED AS TO COUNT IV

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Ford on Count IV and that it award Plaintiff:

a) The value of all actual damages to be proved at trial;

b) compensatory damages for emotional distress;

c) punitive damages;

d) reasonable attorney's fees, costs and disbursements;

e) equitable/injunctive relief;

f) any and all other relief as the Court deems just.

## COUNT V
## (CLAIM AGAINST DHS FOR VIOLATION OF THE FMLA)

57. Plaintiff re-alleges paragraphs 1 through 27 and incorporates them as if fully set forth herein.

56. The FMLA requires employers to grant up to 12 weeks of leave per year for employees to treat serious health conditions and prohibits employers from retaliating against employees exercising their FMLA leave rights.

57. The FMLA also prohibits employers from discriminating against employees for exercising or attempting to exercise FMLA rights.

58. Plaintiff had worked more DHS more than 1250 hours over the year preceding his request for FMLA leave. Plaintiff had not exhausted all of his FMLA leave entitlement.

59. Plaintiff had the qualifying serious health condition of anxiety and depression and

DHS was aware of his condition.

60. Plaintiff requested FMLA leave, or DHS knew or should have known that Plaintiff needed FMLA leave for a qualifying serious health condition, however, Defendant denied such leave and interfered with Plaintiff's FMLA rights when it terminated his employment for being absent on days that he requested medial leave.

61. Additionally, or in the alternative, Defendant retaliated against Plaintiff for requesting FMLA leave or attempting to exercise his FMLA leave rights when it terminated his employment for being absent on days that he requested medial leave Plaintiff requested FMLA leave.

62. DHS's conduct toward Plaintiff exhibited a willful and/or reckless disregard for Plaintiff's rights under the Family and Medical Leave Act.

63. As a result of Defendant's actions, Plaintiff has suffered pecuniary losses.

64. Plaintiff demands to exercise his right to a jury trial of this matter.

## PRAYER FOR RELIEF AS TO COUNT V

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against DHS on Count V and that it award Plaintiff:

a) Injunctive relief;

b) The value of all actual damages to be proved at trial;

c) Liquidated damages;

d) Attorneys' fees and costs incurred in this action;

e) Such other relief as is just and equitable;

f) The plaintiff requests a jury trial of this action.

## COUNT VI
### (SECTION 1983 CLAIM AGAINST EAGELSON SEEKING INJUNCTIVE/PROSPECTIVE RELIEF FOR VIOLATION OF EQUAL PROTECTION CLAUSE OF THE 14th AMENDMENT SEEKING DAMAGES - RACE DISCRIMINATION)

65. Plaintiff re-alleges paragraphs 1 through 27 and incorporates them as if fully set forth herein.

66. DHS/Eagelson subjected Plaintiff to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the terms and conditions of his employment and terminating his employment because of his race knowingly failing and refusing to protect him from such discrimination.

67. DHS/Eagelson's actions and failures to act violated Plaintiff's right to be free from race discrimination and harassment guaranteed by the Equal Protection Clause 14th Amendment and 42 U.S.C. § 1983.

68. Plaintiff is suffering harm and will continue to suffer harm unless DHS/Eagelson reinstates his employment.

69. As director of DHS, Eagelson has the authority and power to reinstate Plaintiff to his former position.

70. Plaintiff demands to exercise his right to a jury trial of this matter.

### RELIEF REQUESTED AS TO COUNT VI

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Eagelson on Count VI and that it order Eagelson to reinstate Plaintiff.

## COUNT VII
### (SECTION 1983 CLAIM AGAINST EAGELSON SEEKING INJUNCTIVE/PROSPECTIVE RELIEF FOR VIOLATION OF SECTION 1981)

71. Section 1981 makes it unlawful for an employer to discriminate against an employee based upon his or her race or ethnicity in the making, performing, modifying, and

termination of contracts, including at-will employment contracts.

72. By virtue of Plaintiff's and DHS's employment relationship, an employment contract was made by and between Plaintiff and DHS/Eagelson.

73. By its conduct alleged herein, DHS/Eagelson discriminated against Plaintiff on the basis of his race in the performance and termination of its employment contract when it terminated Plaintiff and by continuously failing to reinstate him.

74. Plaintiff is suffering harm and will continue to suffer harm unless DHS/Eagelson reinstates his employment.

75. As director of DHS, Eagelson has the authority and power to reinstate Plaintiff to his former position.

76. Plaintiff demands to exercise his right to a jury trial of this matter.

## RELIEF REQUESTED AS TO COUNT VII

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Eagelson on Count VII and that it order Eagelson to reinstate Plaintiff.

TROY R. COLLIER
BY:**/s/ Michael T. Smith**
Michael T. Smith
Trial Attorney

Michael T. Smith (ARDC No. 6180407)
**MICHAEL T. SMITH & ASSOCIATES**
10 N. Martingale Road, Suite 400
Schaumburg, Illinois 60173
Telephone: (847) 466-1099
*msmith39950@aol.com*